UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

DANNY PERSFUL and                                                                PLAINTIFFS
KAREN PERSFUL, individually and
d/b/a UNCLE DAN'S PAWN GUN AND ARCHERY


v.                                                                                       NO. 3:13-CV-00519-S


ST. MATTHEWS POLICE DEPARTMENT,                                  DEFENDANTS
CHARLES PORTMAN, individually and in
his official capacity,
EDDIE NAPIER, individually and in
his official capacity, and
CITY OF ST. MATTHEWS


**MEMORANDUM OPINION**

This matter is before the court on motion of the Defendants, St. Matthews Police Department, Charles Portman, in his individual and official capacities, Eddie Napier, in his individual and official capacities, and the City of St. Matthews, for summary judgment as to all Counts in the Complaint. DN 1-1; DN 19.  Fully briefed, the matter is now ripe for adjudication. Having considered the parties' respective positions, the Court concludes that there are no material issues of fact in dispute as to all Counts against the Defendants.  For the reasons set forth below, the Court grants the Defendants' motion for summary judgment.

**I.**

The Plaintiffs, Danny and Karen Persful (the "Persfuls"), individually and d/b/a Uncle Dan's Pawn Gun and Archery, are the owners and operators of Uncle Dan's Pawn Gun and Archery ("Uncle Dan's"), a corporation doing business in Elizabethtown, Kentucky.  Their paths crossed those of the St. Matthews Police Department, Detective Charles Portman ("Detective Portman"), Detective Eddie Napier ("Detective Napier"), and the City of St. Matthews

(collectively, the "Defendants"), during the latter's investigation of a theft and subsequent sale of two diamond rings by a third party, Allen Kinder ("Kinder"). The Plaintiffs' claims involve the Defendants' actions during that investigation – namely, their seizing a ring in the Plaintiffs' possession. Except where indicated otherwise, the following facts are undisputed.

Gross Diamonds contacted the St. Matthews Police Department to report that Kinder had purchased two diamond rings from their store in November of 2012 with bad checks. DN 22-3. Detective Portman, a detective sergeant for the department, reviewed the case report shortly thereafter and assigned the case to himself. *Id*. He recalled Kinder's name from an incident report he reviewed in September 2012 that alleged he had purchased six or seven thousand dollars of jewelry with bad checks. *Id*. Detective Portman then turned to a website called LeadsOnline, to which pawnshops are required to report their transactions, and performed a sixty-day (60) search on Kinder. *Id*. LeadsOnline revealed that Kinder had sold two diamond rings to pawn shops in November 2012 and that one of them was Uncle Dan's. *Id*. Because the ring in LeadsOnline transaction report matched the ring description in Gross Diamond's police report, Detective Portman took a printout of the LeadsOnline materials to Gross Diamonds for verification. There, Gross's documentation revealed that the ring sold to Uncle Dan's was identical to that it sold to Kinder. *Id*.

Detective Portman then called Uncle Dan's and inquired with Karen Persful about its procedure for placing a hold on an item. *Id*. When Portman indicated that Uncle Dan's had taken in an item that needed to be placed on a police hold, Karen Persful stated that she only dealt with the Elizabethtown Police Department. *Id*. Portman then contacted the Elizabethtown Police Department, which culminated in his sending Mark Gross of Gross Diamonds to identify the ring in Uncle Dan's possession; he confirmed that it was the ring that Kinder had purchased. *Id*.

Then, Portman interviewed Kinder, whom was in police custody, about his transactions with Gross Diamonds. *Id*. Kinder admitted to writing two checks for over $10,000.00 worth of diamond rings on accounts that he knew could not cover the checks and with no intention of paying for the rings. *Id*. He also admitted to selling one ring to Uncle Dan's for $1,000.00, $800.00 of which was eventually recovered by the St. Matthews Police Department. *Id*. Kinder was taken to Jefferson County Jail and charged with theft by deception. *Id*.

Portman continued his attempts to retrieve the ring but received no cooperation from Uncle Dan's or the Elizabethtown Police Department. *Id*. He resultantly decided to seek a search warrant to seize it from Uncle Dan's. *Id*. Portman then confirmed the pawn shop's location and filled out an affidavit to support a search warrant. *Id*. In that warrant, he checked a box indicating that there was "probable and reasonable cause to believe and [that he does] believe that [the ring] constitutes . . . stolen or embezzled property." DN 22-25. Portman took the affidavit to Jefferson County Circuit Court, answered some of the issuing judge's questions, and received a search warrant for the ring in question. DN 22-3. He then met Detective Napier, Detective Danny Grant, and Kentucky State Trooper Oughten at Uncle Dan's to execute the warrant.

The four officers entered Uncle Dan's and executed the warrant and were immediately met by Karen Persful, Uncle Dan's secretary/treasurer. DN 22-5. At this time, Karen Persful was aware of circumstances where Uncle Dan's has purchased stolen items without knowing they were stolen, so the situation was by no means foreign to her; however, in those circumstances, a *local* police department – the Elizabethtown Police Department – brought a case number to Uncle Dan's, Uncle Dan's released item to them, and the department then filed charges against the thief on Uncle Dan's behalf. DN 22-2. When dealing with non-local police,

on the other hand, she directed them to the Elizabethtown Police Department, just as she had done when Portman called. *Id*. Then, because the criminal proceedings that followed would also typically be non-local, the Elizabethtown Police Department assisted Uncle Dan's in seeking restitution. *Id*. In other words, it appears that the Uncle Dan's dealt solely with local police under similar circumstances – a fact that is pertinent to the seizure that followed between the Persfuls and the four non-local officers.

     Once Portman handed Karen Persful the warrant and stated that the officers were there for the ring, she showed her husband, Danny Persful, the warrant and asked him if it looked right. *Id*. They questioned its authenticity but now admit that neither of them had seen a warrant before. *Id*. Danny Persful then instructed Karen to call Detective Pete Chytla, a detective in the Elizabethtown Police Department's Pawn Division with whom they typically dealt in stolen-item situations. *Id*. She called Detective Chytla once, but he did not answer. *Id*. She then attempted to call him a second time, this time on her cell phone, and an officer instructed her "to put [her] phone down unless it was an emergency." *Id*. The Court need not discuss any other actions that occurred in the officer's execution of the warrant, as these facts no longer serve as a basis for any of the Plaintiffs' claims. For purposes of clarity, however, we recite the undisputed fact that the Persfuls were hesitant to hand over the ring based on their beliefs that the issue had already been resolved by the Elizabethtown Police Department and that a ring purchased with a bad check is not "stolen." The officers eventually obtained the ring and left.

     Upon resolution of the criminal proceedings against Kinder, the Jefferson Circuit Court ordered that the ring be returned to Gross Diamonds, which it was. The record reflects that the Persfuls never petitioned the Jefferson County Circuit Court's Criminal Division, which adjudicated Kinder's theft case, to seek return of the ring or its value in restitution. Nor have

they ever requested, or sought anyone's help in requesting, restitution from Kinder. Karen Persful claims that she did not seek restitution because she was "very unsure if the item was stolen or not stolen, due to the fact it was a returned check." *Id*. at 45-46.

Based on the foregoing, the Persfuls filed this action against the Defendants bringing four claims against the Defendants for: 1). Violation of Federal Constitutional Amendments IV and XIV and Kentucky Constitution Section 13 (Count I); 2). The City of St. Matthew's Failure to Properly Employ, Train and Supervise its Officers to Ensure Constitutional Compiance ("Monell Claim") (Count II); 3). Violation of Federal Constitutional Amendment V and Kentucky Constitution Section 13 (Count III); and, 4). State Law Conversion and Outrage (Count IV). DN 1-1. Their Federal Constitutional claims are brought under 42 U.S.C. § 1983. This matter stands before the Court on the Defendants' motion for summary judgment. The Plaintiffs concede that their only remaining claims are for Fourth and Fourteenth Amendment Violations and Conversion. DN 26. They also concede that judgment for the St. Matthews Police Department is proper, for it is not a proper party. *Id*. Our following discussion is so limited.

## II.

A court may grant a motion for summary judgment if it finds that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of specifying the basis for its motion and identifying that portion of the record which demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once the moving party satisfies this burden, the nonmoving party thereafter must produce specific facts demonstrating a genuine issue of fact for trial. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247–48 (1986).

The evidence must be construed in a light most favorable to the party opposing the motion. *Bohn Aluminum & Brass Corp. v. Storm King Corp.*, 303 F.2d 425 (6th Cir. 1962). However, the nonmoving party is required to do more than simply show there is some "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The nonmoving party cannot rely upon the assertions in its pleadings; rather that party must come forward with probative evidence, such as sworn affidavits, to support its claims. *Celotex*, 477 U.S. at 324. It must present specific facts showing that a genuine factual issue exists by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence . . . of a genuine dispute[.]" Fed. R. Civ. P. 56(c)(1). "The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]." *Anderson*, 477 U.S. at 252.

### III.

The Defendants contend that they are entitled to summary judgment on all remaining claims in Counts I and IV – Violations of the Fourth and Fourteenth Amendments and Conversion. We address these claims below.

### A. Fourth Amendment Claim

Having agreed that that summary judgment appropriate against Defendant Napier on this claim, the Plaintiffs' only remaining Fourth Amendment claim is lodged against Defendant Portman. The gist of this claim is that Portman deliberately included a false statement in the affidavit upon which a Jefferson County Court Judge issued the search warrant in question, thus rendering the warrant unsupported by probable cause. Portman argues, however, that his affidavit contained no false statements and that, even assuming it did, that any false statement

was not a *deliberate* falsehood or submitted with a *reckless disregard for the truth*. The Court agrees for the reasons that follow.

It is well-settled that the Constitution protects against "unreasonable searches and seizures," and that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. As in this case, the usual instrument through which law enforcement provides this information to the issuing judicial officer is a search warrant *affidavit*. Notwithstanding the issuance of a search warrant based on such an affidavit, plaintiffs can successfully challenge the affidavit by establishing by a preponderance of the evidence that it contains a statement that is a "deliberate falsehood" or that was "submitted with a reckless disregard for the truth." *Blane v. Com.*, 364 S.W.3d 140, 146 (Ky. 2012). If the plaintiff makes such a showing, the court must examine whether the affidavit's remaining content was sufficient to establish probable cause; if it was not, the search warrant must be voided. *Id*. The Plaintiffs here have attempted – albeit unsuccessfully – such a showing.

The Plaintiffs argue that the search warrant at issue was unsupported by probable cause because Detective Portman's affidavit falsely indicated that the ring was "stolen or embezzled property." DN 22-25. They point us to Ky. Rev. Stat. Ann § 335.2-403(1)(b), which explains that when one purchases goods "in exchange for a check that was later dishonored," he or she has the power to transfer good title to a good faith purchaser for value. Accordingly, they contend that Kinder, who acquired the ring with a bad check, had the power to transfer good title to Uncle Dan's. Then they conclude that the ring could not have been "stolen or embezzled property" because Uncle Dan's had good title. Despite laudable efforts to manufacture a Fourth

Amendcment claim out of Ky. Rev. Stat. Ann § 335.2-403(1)(b), the Plaintiffs' arguments fall short for two reasons.

First, and most fundamentally, the affidavit did not contain any falsehoods. The ring at issue was, quite literally, "stolen property," regardless of whether any statutory scheme may ultimately give the Plaintiffs good title to it. Kinder admitted to violation Ky. Rev. Stat. Ann. § 514.040(1), which provides:

> A person is guilty of *theft by deception* when the person *obtains property* [] of another by deception with intent to deprive the person thereof. A person deceives when the person intentionally . . . [i]ssues or passes a check or similar sight order for the payment of money, knowing it will not be honored by the drawee.[1]

(emphasis added). And as Black's Law Dictionary clearly defines them, "[g]oods acquired by larceny, robbery, or *theft*" are "stolen property." STOLEN PROPERTY, Black's Law Dictionary (9th ed. 2009) (emphasis added). Indeed, even Kentucky's Supreme Court refers to property obtained by a violation of this particular statute as "stolen property." *Allen v. Com.*, 395 S.W.3d 451, 460 (Ky. 2013) ("[a]ny thief could avoid a charge [of theft by deception] by simply returning the stolen property."). The Plaintiffs' argument that the ring at issue was not "stolen or embezzled property" is, accordingly, without merit, and they have failed to establish that Detective Portman's affidavit contained any falsehood. The Court gives short-shrift to their "good title" arguments – the affidavit did not speak to who had title to the ring, it only stated Detective Portman's belief that it was "stolen property."

Second, even assuming the ring was not "stolen property," the Plaintiffs have put forth no evidence showing that Detective Portman's included such a falsehood "deliberately" or with "reckless disregard for the truth." The Supreme Court has discussed this requirement in detail,

---

[1] The Plaintiffs' argument that Kinder's crime was completed when he passed the check, before he obtained the ring, is without merit. "Obtaining property" is an essential element of theft by deception. *Allen v. Com.*, 395 S.W.3d 451, 456-57 (Ky. 2013).

explaining that truthfulness "does not mean 'truthful' in the sense that every fact recited in the warrant affidavit is necessarily correct, for probable cause may be founded upon hearsay and upon information received from informants, as well as upon information within the affiant's own knowledge that sometimes must be garnered hastily." *Franks v. Delaware*, 438 U.S. 154, 164, 98 S. Ct. 2674, 2681, 57 L. Ed. 2d 667 (1978) (internal citations omitted). Instead, it proclaimed that the affidavit must be "'truthful' in the sense that the information put forth is believed or appropriately accepted by the affiant as true." *Id*. The record is barren of any evidence showing that Detective Portman did not believe the ring was "stolen property." To the contrary, he was aware of the facts surrounding Kinder's actions and that Kinder had been charged with theft by deception. There no genuine issues on this ground.

In a word, the Plaintiffs' arguments on this claim are those more appropriately made in a civil suit between the Plaintiffs and Gross Diamonds – a fact made evident by their reliance on caselaw discussing competing security interests, not Fourth Amendment claims. *See, e.g.*, *Foley v. Prod. Credit Ass'n of Fourth Dist.,* 753 S.W.2d 876, 878 (Ky. Ct. App. 1988) (discussing the rights of a creditor in property that was purchased with a bad check); *National Pawn Brokers Unlimited v. Osteerman,* 500 N.W.2d 407 (Wis. Ct. App. 1993) (discussing the rights of a pawnbroker versus the rights of a jewelry store). The Fourth Amendment does not require law enforcement to adjudge the legal effect of personal property rights before they submit search warrant affidavits seeking to seize stolen property. Because there are no genuine issues of fact on Plaintiffs' Fourth Amendment claim for the aforementioned reasons, the Court need not discuss the Defendants' qualified immunity arguments. We grant their motion for summary judgment to that extent.

B. **Fourteenth Amendment Claim**

The Plaintiffs Fourteenth Amendment claim is also based solely on Detective Portman's allegedly defective affidavit. DN 26-13. They merely argue that the improper warrant deprived them of proper due process. Because we have found no genuine issues as to the impropriety of the affidavit, however, this claim meets the same fate as the Plaintiffs' Fourth Amendment claims. Accordingly, we grant the Defendant's motion for summary judgment on all Federal Constitutional Claims.

C. State Law Conversion

Finally, the Defendants assert that that the Plaintiffs' conversion claim must also fail at this stage. To that end, they argue that the Plaintiffs cannot establish the elements of conversion and that, even if they could, the Defendants' actions were privileged by virtue of the search warrant. We will discuss each of these arguments in turn.

By its definition, conversion is the "wrongful exercise of dominion and control over property of another." *State Auto. Mut. Ins. Co. v. Chrysler Credit Corp.*, 792 S.W.2d 626, 627 (Ky. Ct. App. 1990). More pragmatically, the Supreme Court of Kentucky has cited the following as the elements of conversion: 1). the plaintiff had legal title to the converted property; 2). the plaintiff had possession of the property or the right to possess it at the time of the conversion; 3). the defendant exercised dominion over the property in a manner which denied the plaintiff's rights to use and enjoy the property and which was to the defendant's own use and beneficial enjoyment; 4). the defendant intended to interfere with the plaintiff's possession; 5). the plaintiff made some demand for the property's return which the defendant refused; 6). the defendant's act was the legal cause of the plaintiff's loss of the property; and 7). the plaintiff suffered damage by the loss of the property. *Kentucky Ass'n of Counties All Lines Fund Trust v. McClendon*, 157 S.W.3d 626, 632 n.12 (Ky. 2005); *see also James T. Scatuorchio Racing Stable,*

*LLC v. Walmac Stud Mgmt., LLC*, 941 F. Supp. 2d 807, 826 (E.D. Ky. 2013). The parties have proffered these elements for our analysis, and the Court is convinced that the Plaintiffs claim must fail on the demand element.

Notwithstanding the Court's convictions, it remains uncertain whether Kentucky's high court intended the listed elements to "address all considerations when pursuing a conversion claim" – especially where it referenced the elements in dicta and in a footnote. *Caudill Seed & Warehouse Co. Inc. v. Jarrow Formulas, Inc.*, No. 3:13-CV-82-H, 2013 WL 4048541, at *7 (W.D. Ky. Aug. 9, 2013) (citing *Kendrick v. Standard Fire Ins. Co.*, 2007 WL 1035018, at *13 (E.D. Ky. Mar. 31, 2007)). Notable here, Kentucky law appears unsettled as to when, if at all, demand for return is an element of conversion. *See id*. Recognizing this ambiguity, we have previously found that under Kentucky law "a plaintiff in a conversion action *need not* plead a demand for return where the plaintiff claims that the taking was wrongful from the outset, rather than an initially lawful taking that later became unlawful." *WCP/Fern Exposition Servs., LLC v. Hall*, No. 3:08-CV-522, 2011 WL 1157699, at *10 (W.D. Ky. Mar. 28, 2011) (quoting Kendrick, WL 1035018, at *13) (emphasis added). So given the possibility that the parties' reliance on the *Mclendon* decision is unfounded, the Court looks to alternative grounds for dismissing the Plaintiffs' conversion claim. The Defendants' privilege argument conveniently provides this alternative.

"[I]t has long been held that a person with legal authority to act has a defense to an intentional tort claim" and that, accordingly, a "police officer [may be] insulated from liability when taking property into evidence." *Wade v. City of Richmond*, No. 2003-CA-000957-MR, 2005 WL 1593748, at *1 (Ky. Ct. App. July 8, 2005). Specifically applicable here, Kentucky courts have adopted the Restatement (Second) of Torts, § 266 (1965), which explains that "one is

privileged to commit acts which would otherwise be . . . a conversion when the act is pursuant to a court order which is valid and fair on its face." *Am. States Ins. Co. v. Citizens Fid. Bank & Trust Co.*, 662 S.W.2d 851, 853 (Ky. Ct. App. 1983). And given that a search warrant constitutes such an order, *see Tobias v. Pletzke*, 933 F. Supp. 2d 892, 919 (E.D. Mich. 2013) (applying the Restatement privilege in the context of a search warrant); *Wade*, 2005 WL 1593748, at *1 (same), the warrant privileged the Defendants' actions to the extent it was valid and fair on its face.

To be valid or fair on its face, the search warrant must meet three requirements: (1) it must be regular in form, (2) it must be issued by a court having authority to issue the particular order and having jurisdiction over the personal property described in it, and (3) all proceedings required for its proper issuance must have duly taken place. *Am. States Ins.*, 662 S.W.2d at 853. Here, the record reveals the warrant at issue was regular in form, that it was issued by a Jefferson County Circuit Court Judge who had authority to issue the warrant and whose jurisdiction included property that was stolen in Jefferson County, and all proceedings for the warrant's issuance took place. Consequently, the warrant was valid and fair on its face and the Defendants were privileged commit conversion pursuant to the warrant.

Lest there be any doubt, this holding accords with the "wrongful exercise of dominion or control" concept underlying a conversion action. It would strain logic for the Court to find that a seizure had been lawful while simultaneously constituting a civil wrong. Moreover, "that the property [may have been] returned to a person who was not, in fact, the lawful owner" after the Jefferson County criminal proceeding, "does not make the police handling of the property a conversion." *Wade*, 2005 WL 1593748, at *1. Therefore, because the Defendants have shown an

absence of any genuine issue of material fact as to conversion through privilege, the Court will grant the Defendants motion for summary judgment on this Count.

## IV.

For the reasons set forth herein, the Court will grant the Defendants' motion for summary judgment. A separate order and judgment will be entered this date in accordance with this Memorandum Opinion dismissing this action with prejudice.

November 19, 2014

**Charles R. Simpson III, Senior Judge**
**United States District Court**